UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANIER THOMPSON,

        Plaintiff,

Case No. 1:13-cv-499

Hon. Gordon J. Quist

v.

MICHAEL MORAN, *et al.*,

        Defendants.

                                /

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendant Stephan Jozlin, P.A. (docket no. 15) and a motion to dismiss or for summary judgment filed by defendants Michael Moran and Charles Gawne (docket no. 24).

        **I.**        **Plaintiff's complaint**

Plaintiff, Lanier Thompson, commenced this action by filing a civil rights complaint naming the following defendants: Michigan Department of Corrections (MDOC) mental health worker Michael Moran ; MDOC mental health worker Sarrah Timmer; MDOC mental health worker Charles Gawne; and Physicians Assistant (P.A.) Stephen Jozlin. Compl. (docket no. 1).[1] Subsequent filings reflect that at the time of the incidents alleged in this action, Moran was a Limited Licensed Psychologist ("LLP") at Ionia Correctional Facility (ICF) and Gawne was the Community Health Services Manager ("CHSM") at ICF. *See* Moran Aff. at ¶ 2 (docket no. 25-2); Gawne Aff. at ¶ 2 (docket no. 25-3). Plaintiff's complaint is difficult to follow. He appears to seek

---

[1] The Court notes that plaintiff's complaint referred to defendant Jozlin as "Josilin."

relief for retaliation and deliberate indifference to a serious medical need.[2] Plaintiff does not state whether he is suing defendants in their official or individual capacities as required by the civil rights form complaint which he used in this action. Rather, plaintiff identified defendants Moran and Gawne as prison mental health staff and defendants Timmer and Jozlin as prisoner mental health workers. *Id.* at p. 2. Finally, plaintiff seeks relief including demands that defendants be fired and that he "retain all of their assets" except for an amount sufficient to live in a "Rode Side (Hotel)" [sic]. *Id.* at p. 13.

## II. Summary judgment standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Defendants seek summary judgment on plaintiff's claims.[3] The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

---

[2] The Court addresses plaintiff's specific allegations against each defendant in the §§ III and IV, *infra*.

[3] While Moran and Gawne's motion states that it is brought "under Fed. R. Civ. P. 12(b) and 56(a)," they have briefed this motion as one for summary judgment under Fed. R. Civ. P. 56.

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

> In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:
>
> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.   P.A. Jozlin

#### A.   Plaintiff's claims

In his supporting brief, P.A. Jozlin fairly summarized plaintiff's allegations against him:

Plaintiff referred to Defendant Jozlin at several identifiable places in the complaint, and the block quote passages below are taken directly from the complaint. At D/E#l at Page ID#5, Plaintiff states:

> On 9-7-12 the Doctor Throy came and told me Michael Moran - Sarah Timmer Charce Gawne all voted that I be taken off my medication) So on 9-10-12 I got my meds and they were lower to a smaller dose then Joslin came and told me I would be remove from meds completely. Then I was assaulted by Officer Sisson on 11-2-12 and Sisson told me he assaulted me because I'm writing grievances on everyone and I made staff tired of me, so on 11-27-12, Joslin came and talk to me and said he think it's time I be place back on my medication which I wasn't on meds from 9-10-12 till 1-10-13 so Joslin says I think you learn your lesson I'm going to give you your meds back just don't I ask write no more grievances on us or no one else.

Plaintiff next refers to P.A. Jozlin in D/E#l, at Page ID#6:

> Joslin tell my mother I love her and I'm sorry for being a mess up son. Then took on razor blades and started to cut my arms on my left arm forearm. I cut my left wrist right by my thumb and main vain I cut my face my neck and my head. Joslin watch me do this suicide act and just stand where he was looking in my cell smiling at me him and the defendant listed wanted me to kill myself that's why each one done what they did so Joslin look at the hall walk off slowly very slowly so I would bleed to death[.]

Plaintiff again refers to P.A. Jozlin at D/E#l, Page ID#8:

> On 1-25-13 Joslin came and said since you want to complain and not be greatful (sic) I gave you your meds [illegible] taking you off all your meds not just the Rispadall (sic) I'm taking the Tradcendon to you will learn to be thank you so Joslin [illegible] I been cutting on myself with a screw out the sink whenever I got depressed or stressed out I also [illegible] and hearing things that wasn't their (sic) I also began thinking I had super powers and the government was trying to kill me so that defendants that are being sued will have part in retaliation by removing my medication for my grievances on them - Joslin

Plaintiff makes another reference to Stephan Jozlin, P.A. at D/E#l, Page ID#10:

4

> Violations done by Michael Moran - Sarah Timmer - Charce Ganne P. A./psych assistant Joslin when I cut myself on 11-27-12 once I stop the bleeding and put pressure on my wrist I wrap it up with a few towels and I layed (sic) down and went to sleep feeling a relief of stress and depression . . . my mind is still unstable from defendants deliberate indifference acts and there retaliation acts.
>
> Plaintiff's final reference to P.A. Jozlin is at D/E#l, Page ID#12:
>
> 10-25-12 Joslin says nothings (sic) wrong with [illegible] Hate I have a behavior problem then on January 2013 Joslin place me back on a depression medicine Rispidall (sic) now if nothings (sic) wrong with me why would a professional place a human with behavior issues on a psychotropic medication then once I complain I be taken off meds again its showing proof I was deliberate indifference against and retaliated on because I file grievance on these staff.
>
> According to Plaintiff's complaint, the timeline as it relates to Defendant Jozlin is as follows: on 9-7-12, medical professionals decided to take Plaintiff off medication. On 9-10-12, Plaintiff's medication dosage was reduced. On 10-25-12, Defendant Jozlin informed Plaintiff that there was nothing wrong with him. On 11-27-12, Defendant Jozlin spoke to Plaintiff about putting him back on medication. On 1-10-13, Defendant Jozlin told Plaintiff, "I think you learned your lesson," and put Plaintiff back on medication. On 1-25-13 Defendant Jozlin changed Plaintiff's medication.

P.A. Jozlin Brief at pp. 3-5.

### B. Discussion

#### 1. Exhaustion requirement

P.A. Jozlin seeks summary judgment for lack of exhaustion. The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One

reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not

receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Plaintiff failed to properly exhaust his claim

#### a. Plaintiff's allegations against P.A. Jozlin

P.A. Jozlin contends that the grievances did not address plaintiff's claims alleged against Jozlin. The Court agrees. Plaintiff's complaint alleged claims against P.A. Jozlin arising on: September 7, 2012 (when Dr. Throy told plaintiff about P.A. Jozlin's vote to be taken off his medication); September 10, 2012 (P.A. Jozlin told plaintiff that he would be removed from the medication); October 25, 2013 (P.A. Jozlin states that nothing is wrong with plaintiff); November 27, 2012 (P.A. Jozlin spoke to plaintiff about putting him back on medication); January 10, 2013 (P.A. Jozlin told plaintiff that he should be placed back on medicine because he had learned his lesson); and, January 25, 2013 (P.A. Jozlin discussed going off of medication).

#### b. The relevant grievances identified by plaintiff

P.A. Jozlin identified six grievances which were either attached to plaintiff's complaint or which could be construed as referencing Jozlin. However, none of these grievances were properly exhausted: ICF 12-07-1283-12F4 ("1283"); ICF 12-09-3286-27A ("3286"); ICF 12-09-3116-12F4 ("3116"); ICF 12-09-3290-28a ("3290"); ICF 12-06-3291-28A ("3291"); and ICF 12-12-4011-28E ("4011"). *See* P.A. Jozlin's Brief at pp. 8-10 (docket no. 15-1). In his response, plaintiff identified the relevant grievances against P.A. Jozlin as grievance nos. 1283, 3286, 3291 and 4011. *See* Plaintiff's Response (docket no. 18).

### i.      Grievance no. 1283

Neither party has provided a copy of the original (Step I) grievance no. 1283. However, P.A. Jozlin has provided a copy of the Step II grievance response (docket no. 15-3), which was dated September 4, 2012, *before* the first incident alleged against P.A. Jozlin. Because grievance no. 1283 was filed days or weeks before the Step II response, this grievance could not exhaust plaintiff's claims against P.A. Jozlin, which allegedly occurred between September 7, 2012 and January 25, 2013.

### ii.     Grievance nos. 3286 and 3291

Neither party has provided a copy of the original (Step I) grievance nos. 3286 or 3291. Plaintiff did provide a copy of the respective Step II grievance appeal forms, in which he stated that the date of the incident grieved in both grievances was September 5, 2012. *See* Grievance no. 3286 (docket no. 1-1 at pp. 11-12); Grievance no. 3291 (docket no. 1-1 at pp. 15-17). Not coincidentally, plaintiff's complaint alleged that on September 5, 2012, defendant Timmer confronted plaintiff about a grievance which plaintiff wrote against LLP Moran. *See* Compl. at p. 3. Based on plaintiff's representations, both grievance nos. 3286 and 3291 involved an incident which occurred on September 5, 2012. Accordingly, neither grievance could exhaust plaintiff's claims against P.A. Jozlin which allegedly occurred between September 7, 2012 and January 25, 2013.

### iii.    Grievance no. 4011

Neither party has provided a copy of the original (Step I) grievance no. 4011. Plaintiff provided a Step II response to this grievance dated March 4, 2013. *See* Grievance no. 4011 (docket no. 1-1 at p. 27). The Step II response states that in the Step I grievance, "[plaintiff] claims

he was informed 9/7/12 he would not longer be prescribed his psychotropic medication," that "he was taken off for retaliatory reasons" and that he "requests to be prescribed the medication again." Step II Response (docket no. 1-1 at p. 27). However, the Step II response stated that the original grievance was rejected as untimely because plaintiff did not file it until December 5, 2012. *Id.* The Step II grievance upheld that rejection. *Id.* There is no evidence in the record that plaintiff appealed this grievance to Step III or that the grievance was deemed timely. Accordingly, the grievance was not properly exhausted. *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91.

### c. Conclusion

For the reasons stated above, none of the grievances identified by plaintiff properly exhausted any of his claims alleged against P.A. Jozlin. *Id.* Accordingly, P.A. Jozlin's motion for summary judgment should be granted.

### IV. LLP Moran and CHSM Gawne

### A. Plaintiff's claims

In their supporting brief, LLP Moran and CHSM Gawne fairly summarized plaintiff's allegations against them:

> Thompson alleges that on July 23, 2012, 16 days before he filed a grievance on ICF Limited Licensed Psychologist - MDOC Defendant Michael Moran, then ICF Mental Health Outpatient Team Chief - MDOC Defendant Charles Gawne came to his cell "to talk some fucking sense in [him] before we have to fuck [him] up". Thompson also alleges that Mental Health Unit Chief Gawne stated that "we are going to get you taken off all your medication [and] beat your black ass". (D/E #1 at Page ID#3).
>
> Thompson alleges that on August 8, 2012, Psychologist Moran came to his cell requesting that Thompson sign off on a grievance that Thompson had filed against him. When Thompson refused, Psychologist Moran threatened to take Thompson off of his medication. *Id.* Thompson also alleges a nearly identical incident transpiring on September 5, 2012 involving Psychologist Moran, although

9

> that grievance was against Clinical Social Worker Sarah Timmer. (D/E #1 at Page ID#4).
>
> Finally, Thompson alleges that on November 27, 2012, he attempted to commit suicide by cutting his arms, forearms, wrist, face, neck and head with a razor blade. After he was placed in the Unit's secured shower stall, Thompson alleges that Psychologist Moran appeared and began laughing at him. Thompson also alleges that Psychologist Moran refused to summon needed medical attention. (D/E #1 at Page ID#6-7).

Defendant Moran and Gawne's Brief at pp. 1-2 (docket no. 25).

### B.     Eleventh Amendment immunity

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Here, LLP Moran and CHSM Gawne contend that they are entitled to Eleventh Amendment immunity as agents for the State of Michigan because plaintiff did not explicitly sue them in their individual capacities. *See Haler v. Melo*, 502 U.S. 21, 25 (1991) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent") (internal quotation marks omitted).

As discussed, plaintiff's complaint did not designate whether LLP Moran or CHSM Gawne were being sued in their official capacity, individual capacity, or both. The Sixth Circuit requires "§ 1983 plaintiffs to 'set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply their capacity as state officials.'" *Shepherd v. Wellman*, 313 F.3d 963, 967 (6th Cir. 2002), quoting *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir.1989). "Where no explicit statement appears in the pleadings, this Circuit uses a 'course of proceedings' test to determine whether the § 1983 defendants have received notice of the

10

plaintiff's intent to hold them personally liable." *Shepherd*, 313 F.3d at 967-68. Here, plaintiff seeks to obtain compensation from LLP Moran and CHSM Gawne because they allegedly retaliated against him and failed to provide him with appropriate medical treatment. Plaintiff's allegations, as rambling as they are, provided notice to defendants of his intent to sue them in their individual capacities. *See*, *e.g.*, *Moore v. City of Harriman*, 272 F.3d 769, 773-74 (6th Cir. 2001) (plaintiff's complaint provided notice of individual liability where the caption listed only the defendant police officers' names without their official titles, the complaint referred to the individual defendants, that they acted for themselves and for the city, that defendants behaved "with malice," and that the plaintiff sought compensatory and punitive damages against each of the defendants). Based on this record, the Court concludes that plaintiff sought to sue Moran and Gawne only in their individual capacities. Accordingly, Moran and Gawne's motion for Eleventh Amendment immunity should be denied.

### C. Retaliation

To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).

As an initial matter, plaintiff does not allege any retaliation against him by CHSM Gawne. Plaintiff's claim against CHSM Gawne is that eight days before plaintiff filed a grievance against LLP Moran, Gawne allegedly threatened to take plaintiff off of his medication, threatened to "beat [plaintiff's] black ass," and told plaintiff that he was "playing with the wrong people boy."

11

Compl. at p. 3. However, there is no allegation that CHSM Gawne's threat was in response to plaintiff engaging in protected conduct or related in any way to plaintiff's exercise of his First Amendment rights. Accordingly, plaintiff has failed to allege the necessary elements of a retaliation claim against CHSM Gawne.

In addition, LLP Moran and CHSM Gawne seek summary judgment on plaintiff's retaliation claim because they lacked the ability to perform the alleged adverse action of prescribing or changing plaintiff's medication. In his supporting affidavit, Moran points out that as an LLP, he does not prescribe medications or have the authority to change the medications ordered by the medical provider (MP). Moran Aff. at ¶ 6 (docket no. 25-2). Similarly, Gawne states that in his position as CHSM, he did not prescribe medicine or have the authority to change the medications ordered by the MP. Gawne Aff. at ¶ 5 (docket no. 25-3).

Plaintiff has not provided any evidence to dispute Moran and Gawne's statements that they lacked the authority to prescribe or change plaintiff's medication. While plaintiff filed a document which was docketed as an affidavit in response to the motion for summary judgment, this document was neither an affidavit nor an unsworn declaration under penalty of perjury as authorized under 28 U.S.C. § 1746. *See* Affidavit (docket no. 32). Rather, the statement was rambling and partially unintelligible, describing plaintiff's past acts of violence, his need for medication, being subjected to "mind games" while in prison, his past actions of rubbing feces on trays, cell walls and his body, and being manipulated by LLP Moran. *Id.* While this document included copies of a misconduct hearing report finding plaintiff guilty of sexual misconduct (exposure) on February 27, 2013, and a letter from the Michigan Department of Community Health dated November 19, 2008 finding plaintiff competent to stand trial in Saginaw County, these attached documents do not rebut

12

statements made in the affidavits executed by LLP Moran or CHSM Gawne. *See* Attachments (docket no. 32-1).

In order to state a valid First Amendment retaliation claim, plaintiff must show that LLP Moran and CHSM Gawne had the ability and authority to take "adverse action" against him. *See Smith v. Campbell*, 250 F.3d 1031, 1038 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999). "Under the causation element of a prisoner's prima facie case for retaliation, the subjective motivation of the decisionmaker is at issue, that is, the plaintiff must show that the decision was motivated, in part, by the plaintiff's protected activity." *Smith*, 250 F.3d at 1038. Stated another way, "[t]he motivations of non-decisionmakers cannot establish a causal connection in a retaliation case." *Echlin v. Boland,* 111 Fed. Appx. 415, 417 (6th Cir. 2004), citing *Smith*, 250 F.3d at 1038. Because Moran and Gawne were not decisionmakers with respect to plaintiff's medication, and not authorized to prescribe or adjust the medication, their statements could not serve as the basis for a retaliation claim. Accordingly, plaintiff has no federal constitutional claim against LLP Moran and CHSM Gawne, and they are entitled to summary judgment on this claim.

**D.     Cruel and unusual punishment**

Plaintiff alleged that LLP Moran and CHSM Gawne engaged in cruel and unusual punishment by making threats. With respect to Moran, plaintiff alleged that he threatened to take plaintiff off of his medications if plaintiff did not sign off on two grievances. *See* Compl. at p.3. With respect to Gawne, plaintiff alleged that on July 23, 2012, Gawne threatened to take him off of his medications and beat him and that plaintiff was "playing with the wrong people." *Id.* In response, both Moran and Gawne executed affidavits in which they deny making the alleged threats. *See* Moran Aff. at ¶ 4; Gawne Aff. at ¶ 4. Moran and Gawne's denial of plaintiff's allegations are

uncontested. Accordingly, there is no genuine issue of material fact with respect to plaintiff's claim that Moran and Gawne's made the alleged threats.

Furthermore, even if Moran and Gawne had made the alleged threats, such threats did not amount to cruel and unusual punishment in violation of the Eighth Amendment. The Supreme Court has held that it is "the unnecessary and wanton infliction of pain . . . [that] constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *see also Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "Allegations of verbal harassment and verbal abuse by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment." *Johnson v. Moore*, 7 Fed. Appx. 382, 384 (6th Cir. 2001), citing *Ivey*, 832 F.2d at 955. "Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Id.* *See also, Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) ("harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits"). Accordingly, Moran and Gawne's motion for summary judgment should be granted with respect to this claim.

### E. Deliberate indifference

Finally, LLP Moran and CHSM Gawne seek summary judgment on plaintiff's claim that they were deliberately indifferent to his serious medical needs. It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his

14

serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson*, 503 U.S. at 8.

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not

15

inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley*, 475 U.S. at 319.

### 1. CHSM Gawne

As an initial matter, plaintiff does not allege that CHSM Gawne engaged in deliberate indifference. Rather, plaintiff alleged that Gawne threatened to take plaintiff off of the medication on July 23, 2013. In his uncontested affidavit, Gawne denied that any such conversation occurred. Gawne Aff. at ¶ 4. Furthermore, as discussed, Gawne lacked the authority to prescribe or take away any medication. *Id.* at ¶ 5. Accordingly, there is no genuine issue of material fact with respect to plaintiff's deliberate indifference claim against Gawne.

### 2. LLP Moran

Plaintiff alleged that on November 27, 2012, after engaging in self injurious behavior, LLP Moran laughed at him and instructed custody staff to instruct nursing staff not to see him. Moran denied these allegations in an affidavit. *See* Moran Aff. at ¶ ¶7-8. According to Moran, earlier that morning, plaintiff told a physician's assistant that he wanted to kill himself and was scratching himself. *Id.* at ¶ 9. At that time, plaintiff was placed in a secure shower stall with one-on-one direct observation and was wearing a suicide prevention gown. *Id.*; Evaluation of Suicide Risk (docket no. 26). Contrary to plaintiff's allegations that he cut his forearms, wrists, thumb, face and neck with a razor blade while P.A. Jozlin watched, when Moran spoke with plaintiff on that date, he observed only superficial scratches on plaintiff's arms and face. Moran Aff. at ¶ 10. Moran's statements are undisputed.

Plaintiff's self-inflicted scratches were not a serious medical need for purposes of a deliberate indifference claim. As the court observed in *Crowder v. Hamilton County Sheriff's Office*, No. 1:11-cv-306, 2012 WL 1866514 (E.D. Tenn. May 22, 2012):

> Minor cuts, bruises, and injuries do not constitute such a serious medical need. *See*, *e.g.*, *Lockett v. Surardini*, 526 F.3d 866, 876 (6th Cir.2008) (minor lacerations and cuts and soreness in two fingers did not constitute serious medical needs); *Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir.2004) (citing cases involving unobvious and minor injuries that did not support Eighth Amendment claims, including minor cuts and bruises resulting from a glass splinter that did not require stitches or painkillers); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir.1990) (swollen wrists with some bleeding did not constitute a serious medical need).

*Crowder*, No. 2012 WL 1866514 at *3.

In this instance, the serious medical need of which plaintiff complains also included threats of suicide. It is undisputed that the prison authorities took plaintiff's threat seriously, and took action by placing him in a secure shower stall, making him wear a suicide prevention gown, and observing him on a one-on-one basis. LLP Moran interviewed plaintiff, assessed the situation, and placed plaintiff on a "Moderate Risk" plan to protect him from further self-injurious behavior. Moran Aff. at ¶ 10; Evaluation of Suicide Risk. Accordingly, plaintiff's claim fails because he has not established the objective component necessary to establish a deliberate indifference claim. *See Hudson*, 503 U.S. at 8-9.

Finally, to the extent that plaintiff alleged that LLP Moran delayed treatment (i.e., that "Moran [started] laughing and said oh I told the officers not to give you medical [attention] and [don't] let the nurse see you"), he has failed to demonstrate a constitutional violation based on this allegation. A prisoner who claims a constitutional violation arising from a delay in medical treatment must place verifying evidence of a detrimental effect in the record to succeed. *See Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (in determining whether an alleged violation

is sufficiently serious, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed"). Even if LLP Moran made the statements which plaintiff attributes to him, plaintiff has failed to place any verifying medical evidence in the record to show that there was a delay in medical treatment or that any such delay had a detrimental effect on him. Accordingly, LLP Moran is entitled to summary judgment on this claim.

### V. Recommendation

For the reasons set forth above, I respectfully recommend that the motions for summary judgment filed by defendant Stephan Jozlin, P.A. (docket no. 15) be **GRANTED** and that he be dismissed from this action.

I further recommend that the motion for summary judgment filed by defendants Michael Moran and Charles Gawne (docket no. 24) be **DENIED** with respect to their claim for Eleventh Amendment Immunity, **GRANTED** in all other respects, and that they be **DISMISSED** from this action.

Dated: September 4, 2014  /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).