UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANIER THOMPSON,

        Plaintiff,

Case No. 1:13-cv-499

Hon. Gordon J. Quist

v.

MICHAEL MORAN, *et al.*,

        Defendants.

                                  /

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on the motion for summary judgment filed by the sole remaining defendant, Sarah Timmer (docket no. 39).

        **I.**        **Plaintiff's complaint**

Plaintiff, Lanier Thompson, commenced this action by filing a civil rights complaint naming the following defendants: Michigan Department of Corrections (MDOC) mental health worker Michael Moran ; MDOC mental health worker Sarrah Timmer; MDOC mental health worker Charles Gawne; and Physicians Assistant (P.A.) Stephen Jozlin. Compl. (docket no. 1). Subsequent filings reflect that at the time of the incidents alleged in this action, Moran was a Limited Licensed Psychologist ("LLP") at Ionia Correctional Facility (ICF) and Gawne was the Community Health Services Manager ("CHSM") at ICF. *See* Moran Aff. at ¶ 2 (docket no. 25-2); Gawne Aff. at ¶ 2 (docket no. 25-3). The Court previously granted summary judgment to defendants Jozlin, Moran and Gawne. *See* Order (docket no. 51).

Plaintiff's complaint sets forth the following allegations against defendant Sarah Timmer. On September 5, 2012, Ms. Timmer came to plaintiff's cell and said (in plaintiff's words):

> I got (a) grievance you wrote on Mike Moran your going to sign off now or Im going to lie on you and say you show me your penis and write you (a) SEXUAL misconduct and get you taken off your meds - I said How I didnt do nothing you write me a sexual misconduct and I aint did nothing sexual Im listening to you. Sarah Timmer said because I will lie you snitching on my co workers Im not going let you do this and plus you got a history of showing your little dick to females so sign off or your getting a sexual ticket and you will be taken off your meds before the month's over - So I told Sarrah Timmer to get away from my cell she smile and left all this taken five to seven minutes and the unit video showed her

*Id.* at pp. ID## 3-4. Shortly after Timmer left, former defendant Moran told plaintiff that he should have signed off on the grievance because now Timmer wrote plaintiff a sexual misconduct ticket. *Id.* at p. ID# 4. The next day (September 6, 2012), plaintiff was reviewed on the sexual misconduct ticket written by Timmer. *Id.* Plaintiff further alleged that on September 7, 2012, a doctor told plaintiff that Ms. Timmer and former defendants Moran and Gawne "all voted that I be taken off my medication" and that on September 10, 2012, plaintiff's medications "were lower." *Id.* Plaintiff seeks relief including demands that all defendants be fired and that he "retain all of their assets" except for an amount sufficient to live in a "Rode Side (Hotel)" [sic]. *Id.* at p. ID# 13.

**II.  Summary judgment standard**

Defendant Timmer seeks summary judgment on plaintiff's claims.[1] The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further

---

[1] The Court notes that plaintiff filed a response to this motion entitled "Brief an support of defendant summrry [judgement motion]." *See* Brief (docket no. 46). The Clerk's Office incorrectly docketed this as a "Brief in support of motion to compel discovery." *Id.*

provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Finally, it is well established that *pro se* complaints, like the one filed in this action, are held to "less stringent standards than formal pleadings drafted by lawyers." *Kent v. Johnson*,

821 F.2d 1220, 1223 (6th Cir. 1987), quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the duty to be "less stringent" with *pro se* complaints does not require this Court to conjure up unpled allegations. *McDonald v. Hall*, 610 F.2d 16, 19 (lst Cir. l979).

### III.     Discussion

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

The Court construes plaintiff's complaint as alleging that defendant Timmer retaliated against plaintiff because he exercised his First Amendment right to petition the government for a redress of grievances against former defendant Moran. To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).

The basis for plaintiff's claim is that Ms. Timmer issued a false misconduct ticket in retaliation for plaintiff's failure to "sign off" on a grievance which plaintiff filed against former defendant Moran and then "voted" to decrease plaintiff's medication. Under the undisputed record

in this case, plaintiff cannot maintain a retaliation action against Timmer because plaintiff was found guilty of the misconduct. On September 5, 2012, Timmer issued plaintiff a Class I misconduct for "sexual misconduct, exposure." *See* Misconduct Report (docket no. 39-2 at p. ID# 313). The conduct occurred at 0830 and is described as follows:

> On the above date and time I was reviewing a grievance cell side with prisoner Thompson #726007. While discussing his grievance, prisoner Thompson backed away from his door, and I could see him through the window masturbating. Prisoner identified by door card, unit count board and OTIS facesheet.

Misconduct Report.

Plaintiff did not attend his misconduct hearing held on September 19, 2012. *See* Class I Misconduct Hearing Report (docket no. 39-3 at p. ID# 314). A corrections officer reported that when asked whether he wanted to attend the hearing, plaintiff said "No." *Id.* The hearing officer found that plaintiff's statement was a voluntary refusal to participate, convened the hearing in his absence, and entered a not guilty plea. *Id.* The hearing officer read the misconduct report along with plaintiff's written statement and two grievances. *Id.* The Hearing Officer found plaintiff guilty for the following reasons:

> Hearing officer finds based on the statement of Ms. Timmer that she was at prisoners cell door to review a grievance with him, he stepped back from the door and he was observed masturbating. Hearing officer finds prisoners action was an intentional exposure of his sexual organ in a manner that had no legitimate purpose. Charge sustained, Hearing officer finds it not credible that a grown woman could be at prisoners cell door looking in and make a mistake as to his actions. . . Recordings shall not be shown to prisoner as it would reveal the capability and limitations of the equipment.

*Id.* After finding plaintiff guilty of the misconduct, the hearing officer sentenced him to 30 says loss of privileges. *Id.* There is no evidence that plaintiff appealed or set aside this misconduct.

5

Where a prisoner alleges that prison personnel retaliated against him by filing a false misconduct violation, "[a] finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir. 2005), quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir.1994). That is the case here. As in *Jackson*, the misconduct report shows that there was some evidence to support the misconduct charge against plaintiff. *See Jackson*, 158 Fed. Appx. at 662. Accordingly, plaintiff cannot maintain a retaliation claim against Ms. Timmer arising from the misconduct ticket.

Furthermore, plaintiff cannot establish the third element of a retaliation claim because Ms. Timmer lacked authority to bring about the alleged adverse action, i.e., reducing plaintiff's psychotropic medications. In order to state a First Amendment retaliation claim against Ms. Timmer, plaintiff must show that Timmer had the ability and authority to take "adverse action" against him. *See Smith v. Campbell*, 250 F.3d 1031, 1038 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999). "Under the causation element of a prisoner's prima facie case for retaliation, the subjective motivation of the decisionmaker is at issue, that is, the plaintiff must show that the decision was motivated, in part, by the plaintiff's protected activity." *Smith*, 250 F.3d at 1038. Here, Ms. Timmer was not a "decisionmaker" authorized to increase or decrease plaintiff's medications. Timmer was employed as a social worker in the mental health department at ICF. Timmer Aff. at ¶ 2 (docket no. 39-5). In her affidavit, Timmer points out that "[a]s a social worker at Ionia Correctional Facility, I did not have the authority or the responsibility to change or recommend changes to an inmates psychotropic medication." *Id.* at ¶ 4. Because Ms. Timmer was not a decisionmaker authorized to adjust plaintiff's medication, plaintiff cannot establish a causal connection between Timmer's alleged malice toward him and future decisions to increase or

6

decrease his medication. *See Echlin v. Boland,* 111 Fed. Appx. 415, 417 (6th Cir. 2004) ("[t]he motivations of non-decisionmakers cannot establish a causal connection in a retaliation case").

Plaintiff's response to the motion did not address the factual issues related to either the misconduct report or Ms. Timmer's status as a "decisionmaker" authorized to reduce his medication. Rather, plaintiff's response included a purported "affidavit" and medical records. *See* Affidavit (docket no. 46 at p. ID# 364); Medical Records (docket no. 46-1 at pp. ID## 366-72). The "affidavit" stated in conclusory fashion that Ms. Timmer wrote a false misconduct report and mentally abused him. *See* Affidavit. Such conclusory claims made within an affidavit are not sufficient to create a genuine issue of material fact. *See Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir.2004) ("conclusory statements" unsupported by specific facts are not sufficient to permit a party to survive summary judgment). More importantly, plaintiff's purported "affidavit" was not a sworn statement. It was merely a signed statement which was not witnessed by a notary. "The absence of a jurat or other evidence of verification requires a finding that the document fails to constitute an affidavit." *Knobloch v. Langholz,* No. 231070, 2002 WL 1360388 at *2 (Mich. App. June 21, 2002) (unpublished). "A purported affidavit, on which perjury could not be assigned if it was wilfully false, would not, in law, be an affidavit at all." *Kelley v. City of Flint*, 251 Mich. 691, 696; 232 N.W. 407 (1930), quoting *Clarke v. Wayne Circuit Judge*, 193 Mich. 33; 159 NW 387 (1916) (syllabus). Furthermore, plaintiff did not execute the "affidavit" under penalty of perjury as allowed under 28 U.S.C. § 1746. Accordingly, plaintiff's "affidavit" will not be considered in resolving this motion for summary judgment. *See generally*, Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts

that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").

Finally, plaintiff submitted copies of medical records from October 25, October 30, November 27, and November 28, 2012. *See* Medical Records (docket no. 46-1 at pp. ID## 366-72). These records include observations made after plaintiff was taken off of psychotropic medications (e.g., "[h]e has an external locus of control and justifies his behavior, lies about his behavior and accuses others of lying on him"). *Id.* at p. ID# 371. While these records support plaintiff's claim that he was taken off his medication, the records do not address either (1) the validity of Ms. Timmer's misconduct report or (2) whether Ms.Timmer was a decisionmaker with respect to his medication. Viewing the evidence in the light most favorable to the non-moving party (plaintiff), there is no genuine issue of material fact to support plaintiff's claim that Ms. Timmer retaliated against him. Accordingly, Timmer's motion for summary judgment should be granted.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendant Timmer's motion for summary judgment (docket no. 39) be **GRANTED** and that this action be **TERMINATED**.

Dated: February 9, 2015                    /s/ Hugh W. Brenneman, Jr.
                                           HUGH W. BRENNEMAN, JR.
                                           United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).